UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLUE ANGEL REALTY, INC.,

                    Plaintiff,

            -v.-

UNITED STATES OF AMERICA and
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,

                    Defendants.

---

20 Civ. 8220 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Blue Angel Realty, Inc., owns an apartment complex that provides housing for low-income and disabled individuals in Utica, New York. More than 25 years ago, Defendant United States Department of Housing and Urban Development ("HUD") awarded Plaintiff's predecessor-in-title a loan that was secured by a mortgage on the apartment complex. Plaintiff brings this action against HUD and Defendant United States of America (together with HUD, "Defendants") to clear the cloud on the title created by HUD's mortgage and recover damages arising out of Plaintiff's inability to sell the complex free and clear of the mortgage. Defendants have moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendants' motion and dismisses Plaintiff's complaint with limited leave to replead.

# BACKGROUND[1]

## A.     Factual Background

### 1.     The Section 811 Program

The mortgage at issue in this case was issued pursuant to the Cranston-

Gonzalez National Affordable Housing Act of 1990, Pub. L. 101-625, 104 Stat.

---

[1]     This Opinion draws its facts primarily from the Amended Complaint (Dkt. #14 (the "AC")), the well-pleaded allegations of which are taken as true for the purposes of this Opinion. The Court also considers the Declaration of Laurie A. Beardi in support of Defendants' motion to dismiss ("Beardi Decl." (Dkt. #18)) and the exhibits attached thereto, including: (i) the July 11, 1996 Mortgage executed by the C.W.B. Housing Development Fund Corporation and HUD (the "Mortgage" (*id.*, Ex. A)); (ii) the July 11, 1996 Use Agreement executed by the same parties (the "Use Agreement" (*id.*, Ex. B)); and (iii) the July 11, 1996 Regulatory Agreement also executed by the same parties (the "Regulatory Agreement" (*id.*, Ex. C)). The Court further considers the Declaration of Bedis Zormati in opposition to Defendants' motion to dismiss ("Zormati Decl." (Dkt. #22)) and the exhibits attached thereto, including certain emails Plaintiff exchanged with HUD's agents in August 2018 (*id*, Ex. C-E).

On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153).

The Court considers three sets of documents that lie outside the four corners of the AC: (i) the documents attendant to HUD's Mortgage; (ii) the statutes and regulations pursuant to which the Mortgage was issued; and (iii) emails Plaintiff exchanged with HUD's agents. *First*, as the Amended Complaint "relies heavily" on the Mortgage, Use Agreement, and Regulatory Agreement, the Court finds that the documents are integral to the Amended Complaint. *See Goel*, 820 F.3d at 559 (observing that "[i]n most instances" where courts deem a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (quoting *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))). *Second*, the Court may take judicial notice of the Cranston-Gonzalez National Affordable Housing Act and the regulations promulgated thereunder. *See Williams* v. *N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) (finding that courts may properly take judicial notice of statutes); *Richardson* v. *N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 13-14 (2d Cir. 2017) (summary order) (finding that courts may also take judicial notice of government regulations). And *third*, the AC incorporates by reference emails Plaintiff exchanged in August 2018 with HUD's agents. (AC ¶¶ 70, 105). *See Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (explaining that "when the complaint alleges that a document made a particular representation, the court may properly look at the document to see whether that representation was made").

4079.  Section 811 of the Act, found at 42 U.S.C. § 8013, authorizes the

Secretary of HUD "to provide assistance to private, nonprofit organizations to

expand the supply of supportive housing for persons with disabilities." *Id.*

§ 8013(b)(2).  The Secretary may provide such assistance through, among other

means, capital advances.  *Id.* § 8013(d)(1).  To protect HUD's interest in a

capital advance provided under Section 811, "HUD ... require[s] a note and

mortgage, use agreement, capital advance agreement and regulatory agreement

from the" recipient of the capital advance.  24 C.F.R. § 891.170(a).  "Any project

for which a capital advance is provided ... shall be operated for not less than 40

years as supportive housing for persons with disabilities[.]"  42 U.S.C.

§ 8013(e)(1)(A).  During that forty-year period, capital advances bear no interest

and do not need to be repaid "so long as the housing remains available for

very-low-income persons with disabilities[.]"  *Id.* § 8013(d)(1).  Of note, even

repayment of the capital advance does not extinguish a recipient's other

obligations under Section 811.  24 C.F.R. § 891.170(a).

### 2.    The Blandina Properties

Plaintiff is the latest in a series of owners of a five-unit apartment

complex located at 312 Blandina Street, Utica, New York (the "Blandina

Properties").  (AC ¶¶ 1-3).  The Blandina Properties were first acquired in 1996

---

For ease of reference, the Court refers to Defendants' memorandum of law in support of
their motion to dismiss as "Def. Br." (Dkt. #19); Plaintiff's memorandum of law in
opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #21); and Defendants'
reply memorandum of law as "Def. Reply" (Dkt. #23).

by C.W.B. Housing Development Fund Corporation ("CWB") for the purpose of providing housing to low-income individuals.  (*Id.* at ¶¶ 4-6).[2]

On July 11, 1996, CWB received a capital advance from HUD pursuant to the Section 811 program.  (AC ¶ 6).  The parties executed three documents incident to this capital advance: (i) the Mortgage; (ii) the Use Agreement; and (iii) the Regulatory Agreement (collectively, the "Capital Advance Agreement"). (*See id.*; *see also* Mortgage; Use Agreement; Regulatory Agreement).  The Mortgage stated that HUD would provide CWB with a capital advance of $1,024,600 in exchange for a mortgage on the Blandina Properties. (Mortgage 2).  The Use Agreement provided that the Blandina Properties would "be used solely as rental housing for very-low income elderly or disabled persons," and that CWB would not transfer ownership of the properties without HUD's permission.  (Use Agreement 2-3).  The Use Agreement further provided that it would continue in force for a term of not less than 40 years from the date of its execution.  (*Id.* at 2).  And the Regulatory Agreement reflected that the Mortgage would neither bear interest nor require payments "so long as the housing remains available for very low-income elderly persons or very low-income persons with disabilities[.]"  (Regulatory Agreement 2).  The parties recorded each component of the Capital Advance Agreement with the Oneida County Clerk.  (AC ¶ 6; Mortgage 1; Use Agreement 1; Regulatory Agreement 1).

---

[2]     Although the Amended Complaint refers to a "C.W.R." Housing Development Fund Corporation (*see, e.g.*, AC ¶ 6), the Mortgage reflects that the relevant organization is the "C.W.B." Housing Development Fund Corporation (*see* Mortgage 1).  Accordingly, the Court will refer to the organization as "CWB."

Approximately eight years after receiving the capital advance from HUD, CWB failed to satisfy its local tax obligations and lost title to the Blandina Properties. (AC ¶ 15). On or about August 19, 2004, the City of Utica sold the Blandina Properties at a tax foreclosure sale to United Four Inc. (*Id.* at ¶ 10). Although Defendants were provided notice of the foreclosure sale (*id.* at ¶ 11), they elected not to participate in the sale or take any action to protect their mortgage interest (*id.* at ¶¶ 12-13). Later, in 2006, CWB provided United Four Inc. with a quitclaim deed to the properties. (*Id.* at ¶ 18).[3]

Plaintiff acquired the Blandina Properties from United Four Inc. by warranty deed in May 2006. (AC ¶ 20).[4] Prior to purchasing the Blandina Properties, Plaintiff performed a title search that failed to uncover any outstanding liens on the properties. (*Id.* at ¶ 22).[5] Plaintiff also purchased title

---

[3]     *See* 43A N.Y. JUR. 2D DEEDS § 242 (internal footnotes omitted):

> A quitclaim deed is used where the grantor intends to convey only such interest as the grantor has as opposed to a grant of the fee or other estate with warranty of title, and it is just as effective to pass such title as any other form of conveyance. Conversely, nothing is conveyed by a quitclaim deed if the grantor had no title to, nor interest in the property conveyed. A quitclaim deed passes only such right, title, and interest as the grantor has at the time of making the deed and which is capable of being transferred by deed, unless a contrary intent appears, and it transfers nothing more.

[4]     *See* 43 N.Y. JUR. 2D DEEDS § 4 (internal footnote omitted):

> Real property may be conveyed by means of a warranty deed or a deed with full covenants. The covenants ordinarily consist of covenants of seizin and good right to convey, quiet enjoyment, freedom from encumbrances, further assurance, warranty of title, and covenants that the grantor has not encumbered.

[5]     Plaintiff's allegations in this regard are imprecise. Plaintiff concedes that the Blandina Properties were encumbered by a "'use agreement' or mortgage, duly recorded in the offices of Oneida County Clerk" (AC ¶ 6), but does not further distinguish between the Use Agreement and the Mortgage in the AC, nor does it make mention of the Regulatory Agreement that was filed concurrently with these documents. Plaintiff then suggests that "any lien held by [Defendants] … had apparently been extinguished since same failed to be discovered in the [title] search" (*id.* at ¶ 22), but does not suggest that the

insurance, but its policy was destroyed by a flood that impacted Plaintiff's attorney. (*Id.* at ¶ 24). Since purchasing the Blandina Properties, Plaintiff has been renting the properties to low-income individuals. (*Id.* at ¶ 21).

On or about January 10, 2018, Plaintiff entered into a contract to sell the Blandina Properties to the Utica Municipal Housing Authority (the "Utica Housing Authority"). (AC ¶ 26). But the parties' transaction failed to close on the scheduled date in July 2018 because the Utica Housing Authority's title search uncovered the Mortgage, which was recorded with the Oneida County Clerk. (*Id.* at ¶¶ 26-28, 31, 35). In an attempt to salvage the sale, Plaintiff contacted HUD's Buffalo, New York office and asked HUD to extinguish the Mortgage. (*Id.* at ¶¶ 37-40). After Plaintiff exchanged several communications with HUD's Buffalo-based agents in or around August 2018, the agents represented that they did not oppose the cancellation of the Mortgage. (*Id.* at ¶¶ 41, 44).[6] On October 3, 2018, however, HUD's Washington, D.C. office declined to remove the Mortgage from the properties. (*Id.* at ¶ 44). HUD did not provide a reason for its decision. (*Id.*). As a result of HUD's refusal to lift the Mortgage, the Utica Housing Authority canceled its purchase of the

---

Mortgage (or the Use Agreement or the Regulatory Agreement) had actually been removed from the Clerk's Office records (*see also id.* at ¶ 86 ("When [Plaintiff] purchased the real property in issue, the defendants' mortgage failed to appear as a cloud on title although a title search had been conducted on behalf [of Plaintiff].")); *id.* at ¶ 89 ("said lien, upon information and belief, did not exist at the time the purchase was made by plaintiffs")).

[6]   Plaintiff's allegations are again imprecise. Plaintiff alleges in the early portion of the AC that HUD's Buffalo-based agents merely "indicated [the Mortgage] should be cancelled" (AC ¶ 41) and that "they did not see an issue with the cancellation by HUD of the" Mortgage (*id.* at ¶ 44). Later in the AC, however, Plaintiff alleges that the same agents "represented that the matter would be resolved in favor of [Plaintiff] and that the [Mortgage] would be lifted and the title cleared[.]" (*Id.* at ¶ 87).

Blandina Properties and Plaintiff has incurred significant financial damages, including the loss of the value of the contract and of the ability to sell the Blandina Properties free and clear of the Mortgage.  (*Id.* at ¶¶ 45-46).

**B.    Procedural Background**

On January 29, 2020, Plaintiff filed a claim with HUD's Federal Tort Claims Center seeking $4,790,000 in damages.  (AC ¶¶ 59-60).  By letter dated June 4, 2020, HUD denied Plaintiff's claim.  (*Id.* at ¶ 60).

Following HUD's denial, Plaintiff filed the initial Complaint in this case on October 2, 2020.  (Dkt. #1).  On December 18, 2020, Defendants submitted a pre-motion letter stating their intent to move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. #9).  At the initial pretrial conference held on January 6, 2021, the Court authorized Plaintiff to file an amended complaint and set a briefing schedule for Defendants' motion to dismiss the amended complaint.  (*See* Minute Entry for January 6, 2021).

Plaintiff filed the Amended Complaint (the "AC"), which is the operative pleading in this matter, on January 29, 2021.  (Dkt. #14).  On March 5, 2021, Defendants moved to dismiss the AC.  (Dkt. #17-19).  Plaintiff filed its opposition brief on April 9, 2021 (Dkt. #20-22), and Defendants submitted a reply brief on April 23, 2021 (Dkt. #23).

On August 19, 2021, following the close of briefing on Defendants' motion to dismiss the AC, Plaintiff requested an emergency conference to address its intent to sell the Blandina Properties prior to the Court's resolution of Defendants' motion.  (Dkt. #24).  Plaintiff stated that it had entered into a

contract to sell the Blandina Properties, but could not complete the sale until the status of the Mortgage was resolved. (*Id.*).  Later that same day, the parties exchanged dueling letters addressing whether a conference was appropriate. Defendants argued that a conference was unnecessary because Plaintiff's letter sought the same relief as the AC and Defendants' motion to dismiss the AC was fully briefed and pending before the Court. (Dkt. #25).  Plaintiff replied that its sale of the properties would obviate the need for further litigation. (Dkt. #26). On August 20, 2021, the Court denied Plaintiff's request for a conference, but remarked that the parties were free to explore a resolution of the matter among themselves. (Dkt. #27).  As the Court has not received any further submissions from the parties, it finds Defendants' motion to dismiss to be fully briefed and ripe for the Court's resolution.

## DISCUSSION

**A.  Applicable Law**

### 1.  Motions Under Federal Rule of Civil Procedure 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted).  A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A case is properly dismissed for lack of subject matter jurisdiction … when the district

court lacks the statutory or constitutional power to adjudicate it." *Huntress* v. *United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (summary order) (quoting *Makarova*, 201 F.3d at 113), *cert. denied*, 141 S. Ct. 1056 (2021).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, ... but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted). When jurisdiction is contested, a court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits. *See Zappia Middle E. Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

## 2.    Motions Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). When evaluating the viability of a plaintiff's claims, the Court must accept as true all well-pleaded factual allegations contained in the operative complaint. *Id.* Additionally, the Court may consider any written

instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

## B.   Analysis

In this case, Plaintiff alleges claims for (i) mandamus relief (AC ¶¶ 79-91); (ii) quiet title (*id.* at ¶¶ 92-109); (iii) declaratory judgment (*id.* at ¶¶ 110-123); (iv) negligence (*id.* at ¶¶ 124-134); (v) "violation of applicable federal law" (*id.* at ¶¶ 135-145); (vi) unjust enrichment (*id.* at ¶¶ 146-153); (vii) fraudulent concealment (*id.* at ¶¶ 154-158); and (viii) *prima facie* tort (*id.* at ¶¶ 159-167). Defendants contend that all eight claims must be dismissed for either lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court begins with Defendants' arguments in support of their motion under Rule 12(b)(1) before turning to their arguments under Rule 12(b)(6).

### 1.   The Court Grants Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1) and Rule 12(b)(6), "the court should consider the Rule 12(b)(1) challenge first" because if it must dismiss for lack of jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined."  *Rhulen*

10

*Agency, Inc.* v. *Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *accord Daly* v. *Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019).  The Court therefore begins with Defendants' motion to dismiss Plaintiff's claims for (i) negligence, (ii) fraudulent concealment, (iii) *prima facie* tort, and (iv) unjust enrichment for lack of subject matter jurisdiction under Rule 12(b)(1).

Defendants advance two arguments in support of their position that this Court lacks subject matter jurisdiction over certain of Plaintiff's claims.  *First,* Defendants assert that Plaintiff's tort claims against HUD must be dismissed because the Federal Tort Claims Act (the "FTCA"), and in particular 28 U.S.C. § 1346(b), does not permit federal agencies to be named as defendants in tort suits.  (Def. Br. 7-8).  *Second,* Defendants argue that Plaintiff's tort and unjust enrichment claims must be dismissed in their entirety because they do not fall within the FTCA and thus are barred by the principle of sovereign immunity. (*Id.* at 8-10).  As the Court will explain, it finds that it lacks subject matter jurisdiction not only over Plaintiff's tort and unjust enrichment claims, but also over its claim for violation of applicable federal law.

### a.   Plaintiff's Tort Claims Are Barred by Sovereign Immunity

Defendants first seek to dismiss Plaintiff's tort claims under the FTCA. "The FTCA waives the federal Government's sovereign immunity from tort claims brought against the United States for harm caused by the negligence or wrongful conduct of any employee of the Government." *Badilla* v. *Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 121 (2d Cir. 2021) (internal quotation marks omitted) (citing 28 U.S.C. § 1346(b)(1)).  "The FTCA contains several

exceptions, each of which preserves the Government's sovereign immunity under specified circumstances." *Id.* Two such exceptions are relevant here. *See* 28 U.S.C. § 2680(h). *First*, the United States retains its immunity under the FTCA from "[a]ny claim arising out of ... interference with contract rights[.]" *Id. Second*, the United States also retains its immunity under the statute from "[a]ny claim arising out of ... misrepresentation[.]" *Id.*

"A plaintiff may not by artful pleading avoid the statutory exceptions to the FTCA." *Dorking Genetics* v. *United States*, 76 F.3d 1261, 1265 (2d Cir. 1996); *accord Simone* v. *United States*, 642 F. App'x 73, 75 (2d Cir. 2016) (summary order). "In determining the applicability of the [Section] 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Esrey* v. *United States*, 707 F. App'x 749, 750 (2d Cir. 2018) (summary order) (quoting *Lambertson* v. *United States*, 528 F.2d 441, 443 (2d Cir. 1976)). In the following subsections, the Court examines the substance of Plaintiff's three tort claims and finds that each is barred by an FTCA exception.[7]

### i. Negligence

Plaintiff's first tort claim is for negligence. (AC ¶¶ 124-134). In support of its claim, Plaintiff alleges that Defendants were "negligent, careless and

---

[7]   Although the FTCA's statutory exceptions compel the dismissal of Plaintiff's tort claims against both Defendants, Plaintiff's tort claims against HUD must also be dismissed for the independent reason that "the FTCA bars suit against agencies *eo nomine.*" *Mejia* v. *United States*, No. 13 Civ. 5676 (AJN), 2015 WL 5138708, at *4 (S.D.N.Y. Sept. 1, 2015); *see also Leytman* v. *U.S. Dep't of Homeland Sec. Transp. Sec. Admin.*, 804 F. App'x 78, 79 (2d Cir. 2020) (summary order) (stating that "[a]ny FTCA claim must be alleged against the United States, not a specific United States agency").

reckless" in at least 11 different ways.  (*Id.* at ¶¶ 126, 130).[8]  Distilling

Plaintiff's numerous allegations, Defendants characterize Plaintiff's negligence

claim as one for interference with contract and argue that the FTCA does not

waive sovereign immunity for such a claim.  (Def. Br. 9).  The Court agrees with

Defendants and finds that it lacks jurisdiction over the claim.

Plaintiff's claim, although styled as one for negligence, seeks to hold

Defendants liable for the ultimate failure of Plaintiff's contract to sell the

Blandina Properties to the Utica Housing Authority.  Plaintiff alleges that it has

---

[8]     The Court chooses, for readability purposes, not to reproduce Plaintiff's myriad allegations in the body of its Opinion.  For the sake of completeness, however, Plaintiff's allegations are that Defendants were negligent insofar as they:

> [i] permitted the lien to be removed from the title of the premises upon the sale of the property at a tax lien and the recording of the deed at the time of sale; ... [ii] never engaged in any activity to collect on the grant at issue from the grantee; ... [iii] were aware of the sale of the real property in question at a tax foreclosure sale and did nothing to participate in said sale or to protect its alleged lien at the time of the sale; ... [iv] abandoned any and all legal rights the defendants had in said property as to the lien; ... [v] lulled members of the general public, interested in purchasing said real property, in jeopardy, since, upon information and belief, the lien no longer appeared as cloud on title and placed the unwary, acting with due diligence in researching said titles, to upon information and belief, believe they were purchasing real property with a clear title; ... [vi] fail[ed] to remove the recorded grant once the premises were sold from the original grantee, C.W.B. Housing Development Fund Corp. ... to United Four, Inc.;  ... [vii] fail[ed] to ensure that the capital improvement grant was satisfied from the sale of the proceeds between C.W.B. to United Four, Inc.; ... [viii] fail[ed] to ensure that the grant/lien was expunged from the title; ... [ix] fail[ed] to take any and all steps necessary to remove the lien from the title especially after plaintiffs notified the defendants of same and plaintiffs inability to proceed to closing due to the lien on title; ... [x] owed the plaintiffs a duty to clear title ... [and] breached that duty and as a result, the plaintiff has been damaged in that the title is to their real property is not clear and plaintiffs cannot sell said property for fair value; ... [and] [xi] that the defendants have carelessly, recklessly and negligently failed to act in a timely manner to clear said title[.]

(AC ¶¶ 126, 130).

suffered $4,790,000 in damages, consisting of: (i) the $750,000 value of its contract to sell the Blandina Properties to the Utica Housing Authority; (ii) its forgone investment of the proceeds from the sale of the Blandina Properties in a second property valued at $4,000,000; (iii) the lost rental income, approximated at $16,000 per month, that Plaintiff would have earned from the second property; and (iv) the rental income Plaintiff is currently losing on the Blandina Properties.  (AC ¶¶ 133-134).[9]  Contrary to Plaintiff's contentions, these financial injuries were not caused by Defendants' failure to "engage[] in any activity to collect on the grant at issue from the grantee" (*id.* at ¶ 126), to "take any and all steps necessary to remove the lien from the title" (*id.* at ¶ 130), or by any of Defendants' other allegedly negligent actions (*see id.* at ¶¶ 126, 130).  Rather, Plaintiff's injuries arise out of the Utica Housing Authority's decision to exit the contract to purchase the Blandina Properties "due to the cloud on title from HUD."  (*Id.* at ¶ 74).

To be sure, Plaintiff's account suggests that Defendants' refusal to lift the Mortgage contributed to the Utica Housing Authority's decision not to purchase the Blandina Properties.  (*See* AC ¶ 74).  But that "causal chain" only reinforces the fact that Plaintiff's claim seeks to hold Defendants liable for their interference with its contract to sell the properties, because it is Defendants' interference with the contract, not their breach an independent duty owed to Plaintiff, that forms the basis of Plaintiff's claim.  *See PAB Aviation, Inc.* v.

---

[9]     The AC does not explain the cause of these losses.  Plaintiff explains in its August 19, 2021 letter requesting an emergency conference, however, that "[r]ental payments have not been made by the tenants in said properties due to the pandemic[.]"  (Dkt. #24).

*United States*, No. 98 Civ. 5952 (JG), 2000 WL 1134468, at *3 (E.D.N.Y. Aug. 3, 2000) (finding for similar reasons that plaintiff's negligence claim "is a claim, in substance, for … interference with contract rights"), *aff'd*, 169 F. App'x 61 (2d Cir. 2006) (summary order); *see also Dixon* v. *United States*, No. 13 Civ. 2193 (LAK) (GWG), 2014 WL 23427, at *5 (S.D.N.Y. Jan. 2, 2014) (observing that "in cases where plaintiffs have alleged that federal employees have tortiously interfered with their contracts by revealing harmful information about them to third parties, courts have found such claims to fall under the FTCA exception").

Because Plaintiff's negligence claim seeks to recover for Defendants' alleged interference with Plaintiff's contract rights, the claim is barred by the FTCA's "interference with contract" exception and the Court lacks jurisdiction to hear it. *See PAB Aviation, Inc.*, 169 F. App'x at 63-64 (affirming dismissal of plaintiff's negligence claim under the FTCA after finding that the claim arose out of alleged interference with contract). Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's purported negligence claim.

### ii. Fraudulent Concealment

Plaintiff's second tort claim is for fraudulent concealment. (AC ¶¶ 154-158). Plaintiff alleges that Defendants, through their agents, "made material misrepresentations or omission of a fact to the plaintiff, in allowing the plaintiff to believe that the lien would be lifted so the sale could go forward and/or to clear the title for future sales[.]" (*Id.* at ¶ 157). In response, Defendants argue that Plaintiff's claim is barred by the FTCA's misrepresentation exception. (Def.

Br. 9).  The Court again agrees with Defendants and finds that it lacks jurisdiction over the fraudulent concealment claim.

As previously noted, the United States retains sovereign immunity with respect to "[a]ny claim arising out of ... misrepresentation."  28 U.S.C. § 2680(h).  "[T]he essence of an action for misrepresentation ... is the communication of misinformation on which the recipient relies."  *Spinale* v. *U.S. Dep't of Agric.*, No. 05 Civ. 9294 (KMW), 2007 WL 747803, at *1 (S.D.N.Y. Mar. 8, 2007) (quoting *Block* v. *Neal*, 460 U.S. 289, 296 (1983)).  "For purposes of this exception, 'a misrepresentation may result from the failure to provide information, as well as from the provision of information that is wrong.'"  *Esrey*, 707 F. App'x at 749 (internal alterations omitted) (quoting *Ingham* v. *E. Air Lines, Inc.*, 373 F.2d 227, 239 (2d Cir. 1967)).

Here, Plaintiff's fraudulent concealment claim rests on two alleged misrepresentations by Defendants on which Plaintiff claims to have relied to its detriment.  (AC ¶¶ 154-158).[10]  The first purported misrepresentation occurred when Defendants' agents from the Buffalo HUD office communicated to Plaintiff that HUD would remove its Mortgage on the Blandina Properties.  (*Id.* at ¶ 155).  The second occurred when these same agents failed to inform Plaintiff that HUD would not, in fact, remove the Mortgage.  (*Id.* at ¶ 157).  Plaintiff's fraudulent concealment claim is a quintessential misrepresentation claim, as it relies solely on the Defendants' alleged provision of misinformation, whether

---

[10]    As discussed later in this Opinion, Plaintiff's allegations concerning its communications with HUD representatives are not borne out by the communications themselves.

affirmative or by omission, to Plaintiff.  As such, the claim is barred by the principle of sovereign immunity and the Court lacks jurisdiction over it.  *See Esrey*, 707 F. App'x at 750 (finding that "the gravamen of [plaintiffs'] claim is that the IRS wrongfully withheld information from them" and concluding that such a claim "arises out of misrepresentation" and thus "no court is statutorily accorded jurisdiction to hear it" (internal alterations omitted)); *Regnante* v. *Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 770 (S.D.N.Y. 2015) (dismissing claim premised on "allegations of misrepresentation, concealment, deceit, and fraud, all of which are barred by the doctrine of sovereign immunity"); *see also Kim* v. *United States*, 940 F.3d 484, 492-94 (9th Cir. 2019) (finding fraudulent concealment claim to be barred by FTCA misrepresentation exception).

In its opposition brief, Plaintiff attempts to recast its claim as arising out of Defendants' refusal to lift the Mortgage rather than their alleged misrepresentations concerning the Mortgage's status.  (Pl. Opp. 15-17).  Plaintiff draws its argument from the Second Circuit's decision in *Devlin* v. *United States*, 352 F.3d 525 (2d Cir. 2003).  (Pl. Opp. 16).  In *Devlin*, the Second Circuit found that a claim alleging "negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance," was not barred by the FTCA's misrepresentation exception.  *Devlin*, 352 F.3d at 543.  Plaintiff argues that its fraudulent concealment claim similarly falls outside the scope of the misrepresentation exception because Defendants' alleged "misrepresentation was an operational task and not a communicative task."  (Pl. Opp. 16).  This argument fails for the simple reason

17

that it is inconsistent with the claim Plaintiff actually alleges in the AC.  The AC alleges that Defendants "made material misrepresentations or omission of a fact to [Plaintiff], in allowing [Plaintiff] to believe that the [Mortgage] would be lifted … and [Plaintiff] has been damaged as a result of this justifiable reliance" on Defendants' representations.  (AC ¶ 157).  Despite Plaintiff's attempt to repackage its claim, Defendants' alleged misrepresentations are plainly not collateral to the claim; they are the sole basis for it.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's fraudulent concealment claim.

### iii.      Prima Facie Tort

Plaintiff's third tort claim for *prima facie* tort arises from the same allegations as its negligence claim (*compare* AC ¶¶ 159-167 (*prima facie* tort), *with id.* at ¶¶ 124-134 (negligence)), and is dismissed for the same reasons.

### b.      Plaintiff's Claim for Unjust Enrichment is Not Ripe

Defendants also move to dismiss Plaintiff's claim for unjust enrichment for lack of subject matter jurisdiction.  Plaintiff's claim alleges that "any attempt on the part of" Defendants "to collect monies at the time of sale of the real property by [Plaintiff] to a third party would be unjust enrichment[.]"  (AC ¶ 152).  Defendants argue that the claim is also barred by the FTCA.  (Def. Br. 10-11).  The Court declines to address Defendants' argument under the FTCA because it finds that the claim must be dismissed because it is not ripe.

"Federal courts may adjudicate only those real and substantial controversies admitting of specific relief[,] as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Auerbach*

v. *Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 108 (2d Cir. 1998) (internal quotation marks and alterations omitted).  "To be justiciable, a cause of action must be ripe — it must present a real, substantial controversy, not a mere hypothetical question." *Nat'l Org. for Marriage, Inc.* v. *Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks omitted). "[B]ecause the ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, the court can raise it *sua sponte*[.]"  *United States* v. *Traficante*, 966 F.3d 99, 106 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2634 (2021).

"[I]n addressing any and all ripeness challenges, courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether [i] the issues are fit for judicial consideration, and [ii] withholding of consideration will cause substantial hardship to the parties." *United States* v. *Balon*, 384 F.3d 38, 46 (2d Cir. 2004).  "Unlike a purely legal question that is eminently fit for judicial review, factual disputes beyond the prescience of the court are subject to abstract disagreements over matters that are premature for review." *Traficante*, 966 F.3d at 106 (internal brackets and quotation marks omitted).  Thus, "[a] claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *SC Note Acquisitions, LLC* v. *Wells Fargo Bank, N.A.*, 548 F. App'x 741, 742 (2d Cir. 2014) (summary order) (quoting *Walsh*, 714 F.3d at 687).

In this case, the Court lacks jurisdiction over Plaintiff's unjust enrichment claim because the claim is premised on events that have not

occurred and indeed may never occur.  Plaintiff alleges that "any attempt on the part of [Defendants] to collect the monies at the time of sale of the [Blandina Properties] by [Plaintiff] to a third party *would be* unjust enrichment[.]"  (AC ¶ 152 (emphasis added)).  This allegation is entirely hypothetical.  Despite its attempts, Plaintiff has yet to sell the Blandina Properties, and nowhere in the AC does Plaintiff even suggest that Defendants have sought to collect all or any portion of the proceeds from such sale.  To the contrary, Plaintiff's allegations suggest that Defendants are unlikely to take the actions contemplated by Plaintiff in its unjust enrichment claim.  As Plaintiff alleges elsewhere in the AC, Defendants have never attempted to recover under the Mortgage or to thwart prior sales of the Blandina Properties.  (*See id.* at ¶ 126).  The facts underlying Plaintiff's claim are therefore not only hypothetical; they are also unlikely to occur.  Accordingly, Plaintiff's unjust enrichment claim is not ripe and is dismissed.[11]

### c.    Plaintiff's Claim for Violation of Applicable Federal Law Is Barred By Sovereign Immunity

Although Defendants do not challenge the Court's jurisdiction over Plaintiff's claim for violation of applicable federal law, the Court raises this jurisdictional issue *sua sponte*.  In this claim, Plaintiff alleges that Defendants

---

[11]    Because the Court finds that it lacks jurisdiction over Plaintiff's unjust enrichment claim, it does not reach Defendants' separate argument that the claim should be dismissed for failure to state a claim under Rule 12(b)(6).  *See Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (stating that dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions").

violated "all applicable federal statutes governing the activities of [Defendants]" (AC ¶ 144) by "den[ying] [Plaintiff] the opportunity to fulfill" its contract to sell the Blandina Properties to the Utica Housing Authority (*id.* at ¶ 143).  For these alleged violations of unspecified provisions of federal law, Plaintiff seeks $1,500,000 in damages.  (*Id.* at ¶ 145).  The Court finds that this claim must be dismissed because Plaintiff has not met its burden of showing that the United States waived its sovereign immunity with respect to the claim.

"It is, of course, axiomatic under the principle of sovereign immunity that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Adeleke* v. *United States*, 355 F.3d 144, 150 (2d Cir. 2004) (internal quotation marks omitted).  "Accordingly, in a suit against the United States, 'a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction.'" *Frey* v. *Pekoske*, No. 18 Civ. 7088 (CS), 2021 WL 1565380, at *3 (S.D.N.Y. Apr. 21, 2021) (quoting *Up State Fed. Credit Union* v. *Walker*, 198 F.3d 372, 374 (2d Cir. 1999) (per curiam)).  "Where, as here, the suit is brought against the federal government, the Plaintiff 'bear[s] the burden to show Congress waived sovereign immunity with respect to their claims.'" *Thompson* v. *U.S. Dep't of Educ.*, No. 20 Civ. 693 (AJN), 2021 WL 1199493, at *2 (S.D.N.Y. Mar. 30, 2021) (quoting *Vidurek* v. *Miller*, No. 13 Civ. 4476 (VB), 2014 WL 901462, at *4 (S.D.N.Y. Feb. 27, 2014)).  "[W]here a waiver of sovereign immunity does not apply, a suit should be dismissed under [Rule 12(b)(1).]" *Hamm* v. *United States*, 483 F.3d 135, 137 (2d Cir. 2007).

Plaintiff has not met its burden of establishing a waiver of sovereign immunity with respect to its claim for violation of federal law.  The AC alleges that the Court may exercise jurisdiction over its claims under three statutes: (i) the federal question statute, 28 U.S.C. § 1331; (ii) the FTCA, 28 U.S.C. § 1346(b); and (iii) the Mandamus Act, 28 U.S.C. § 1361.  (AC ¶ 57).  None of these statutes waives the federal government's immunity with respect to Plaintiff's claim, which seeks monetary damages for alleged violations of federal law.  *See Keene Corp.* v. *United States*, 700 F.2d 836, 838 (2d Cir. 1983) (concluding that Section 1331 "does not establish a waiver of sovereign immunity"); *Liranzo* v. *United States*, 690 F.3d 78, 86 (2d Cir. 2012) (noting that the "FTCA does not waive sovereign immunity for claims based solely on alleged violations of federal law"); *Laporte* v. *United States*, No. 09 Civ. 7247 (KMK), 2011 WL 3678872, at *9 (S.D.N.Y. Aug. 19, 2011) (observing that "money damages are unavailable through 28 U.S.C. § 1361").  The remainder of the AC "makes no mention of the concept of sovereign immunity or of any possible basis why sovereign immunity might be waived for purposes of" Plaintiff's claim.  *Thompson*, 2021 WL 1199493, at *3.  Nor is the Court aware of any waiver that would permit Plaintiff's ill-defined claim to move forward. Accordingly, Plaintiff has not carried its burden of identifying an applicable waiver of sovereign immunity related to its claim for violation of federal law and the Court dismisses the claim for lack of subject matter jurisdiction.[12]

---

[12]    The Court recognizes that, in instances in which it determines that it lacks subject matter jurisdiction, the preferred course of action is to refrain from considering other arguments proffered by the movant.  *See supra* n.11.  The Court pauses to note,

### 2. The Court Grants Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss Plaintiff's remaining claims for (i) quiet title, (ii) mandamus relief, and (iii) declaratory relief for failure to state a claim under Rule 12(b)(6). The Court grants Defendants' motion and dismisses each claim.

### a. Quiet Title

Defendants argue that Plaintiff's quiet title claim should be dismissed because it (i) is barred by the statute of limitations and (ii) does not entitle Plaintiff to relief. (Def. Br. 12-16). In opposition, Plaintiff argues that (i) the claim is timely and, in the alternative, (ii) the Court should equitably toll the statute of limitations. (Pl. Opp. 19-23). As the Court explains below, it finds that Plaintiff's claim is barred by the applicable statute of limitations and declines to toll the limitations period on the record before it.

Plaintiff brings its claim for quiet title pursuant to 28 U.S.C. § 2410. (AC ¶¶ 92-109). That statute provides that "the United States may be named a party in any civil action or suit in any district court … to quiet title to … real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(1). Although the statute is silent as to the applicable statute of limitations, courts in this District and across the country have held that similar quiet title actions "brought pursuant to [Section] 2410

---

however, that it is deeply skeptical of Plaintiff's ability to state a plausible claim for "violation of applicable federal law." The AC does not identify a particular federal law that Defendants allegedly violated, and Plaintiff fails to address the claim in its opposition brief, effectively abandoning it. "[W]hether or not Defendants' arguments had merit, it was Plaintiff['s] obligation to address the issue, on pain of [its] claim being deemed abandoned." *Simon* v. *City of New York*, No. 14 Civ. 8391 (JMF), 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015).

are subject to the catch-all six-year statute of limitations for civil actions commenced against the United States, found in 28 U.S.C. § 2401(a)." *Nath* v. *JP Morgan Chase Bank*, No. 15 Civ. 3937 (KMK), 2016 WL 5791193, at *13 (S.D.N.Y. Sept. 30, 2016) (collecting cases); *see also Caffey* v. *Heller First Fin. Cap. Corp.*, 281 F. App'x 315, 317 (5th Cir. 2008); *Macklin* v. *United States*, 300 F.3d 814, 821 (7th Cir. 2002).  Thus, for Plaintiff's claim to be timely, it must have accrued no later than October 2, 2014 — or more than six years prior to Plaintiff's filing of the Complaint in this matter.  (*See* Dkt. #1).

"A federal claim generally accrues 'once the plaintiff knows or has reason to know of the injury which is the basis of his action,' that is, 'the allegedly impermissible conduct and the resulting harm.'" *DeSuze* v. *Ammon*, 990 F.3d 264, 270 (2d Cir. 2021) (quoting *Veal* v. *Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)).  Although neither party cites to authority addressing when a quiet title claim accrues under circumstances comparable to those presented here, Defendants contend that Plaintiff's claim accrued when it purchased the Blandina Properties in May 2006, because Plaintiff knew or should have known that the properties were subject to the contested Mortgage at that time.  (Def. Br. 13).  In opposition, Plaintiff argues that its claim could not have accrued in 2006 because it had no actual knowledge of the existence of the Mortgage until it attempted to sell the Blandina Properties to the Utica Housing Authority in the early months of 2018.  (Pl. Opp. 20; *see also* AC ¶ 26).

The Court finds that Plaintiff's quiet title claim accrued at the latest in May 2006.  As set forth in the AC, CWB and HUD executed the Mortgage on

the Blandina Properties on July 11, 1996, and the Mortgage was recorded with the Oneida County Clerk the following day.  (AC ¶ 6; Mortgage 1).  From that point forward, HUD took no action to extinguish or otherwise remove the Mortgage from the properties.  (AC ¶ 32).  Thus, the "injury which is the basis" of Plaintiff's action — HUD's claimed security interest in the Blandina Properties — existed at the time Plaintiff purchased the properties from United Four Inc. in May 2006.  Plaintiff could have brought a quiet title claim at that time, or at any point in the following six years.  *See DeSuze*, 990 F.3d at 270.

Plaintiff's efforts to avoid the statute of limitations fall short.  *First*, Plaintiff repeatedly alleges that the title search it performed prior to its purchase of the Blandina Properties failed to identify the Mortgage.  (*See, e.g.*, AC ¶¶ 99-100; *see also* Pl. Opp. 5, 12, 19-20).  But Plaintiff does not provide a reason for its failure to locate the Mortgage.  And its assertion regarding the title search it performed prior to obtaining a warranty deed for the property from United Four Inc. is particularly perplexing given (i) its concession that the Mortgage was "duly recorded" (AC ¶ 6) and (ii) the fact that the Utica Housing Authority's title search more than a decade later disclosed the Mortgage without issue (*id.* at ¶ 103).  Even accepting Plaintiff's claim that it was unaware of the Mortgage at the time it purchased the properties, however, the fact remains that a claim accrues "once the plaintiff knows *or has reason to know* of the injury which is the basis of his action."  *DeSuze*, 990 F.3d at 270 (emphasis added).  And, under New York law, Plaintiff had reason to know of the Mortgage at the time it purchased the Blandina Properties because "[t]he

25

intended purchaser [of real property] must be presumed to have investigated the title, and to have examined every deed or instrument properly recorded, and to have known every fact disclosed or to which an inquiry suggested by the record would have led." *Akasa Holdings, LLC* v. *214 Lafayette House, LLC*, 109 N.Y.S.3d 17, 29 (1st Dep't 2019) (italics omitted).  In this case, a reasonable investigation of the title to the Blandina Properties at the time Plaintiff purchased them would have revealed the "duly recorded" Mortgage.  (AC ¶ 6).

*Second*, Plaintiff argues that its claim may be deemed timely "under the continuing violation doctrine." (Pl. Op. 21).  "The continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date." *Gonzalez* v. *Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks omitted).  "Conduct that has been characterized as a continuing violation is composed of a series of separate acts that collectively constitute one unlawful … practice." *Washington* v. *Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (internal quotation marks omitted).  "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (internal alteration omitted).  Here, as stated above, Plaintiff's quiet title claim accrued at the time it purchased the Blandina Properties, and thus this is not a case in which Defendants' subsequent actions formed an element of Plaintiff's claim or

were otherwise necessary to push the claim across the viability threshold. Therefore, the continuing violation doctrine is not applicable.

*Third* and finally, Plaintiff argues that the Court should toll the statute of limitations.  (Pl. Opp. 20-21).  "[E]quitable tolling is only appropriate in rare and exceptional circumstances[.]"  *Edo* v. *Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) (summary order); *see also DeSuze*, 990 F.3d at 271 (holding that equitable tolling is available under Section 2401).  "A statute of limitations may be equitably tolled as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, that is, in a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action."  *DeSuze*, 990 F.3d at 271 (internal quotation marks omitted).

The Court declines to toll the statute of limitations on the record before it.  Plaintiff mounts only a threadbare argument in support of equitable tolling, primarily asserting that the limitations period should be tolled because its title search failed to identify the Mortgage on the Blandina Properties.  (Pl. Opp. 21).  Rather than argue that some external factor prevented it from exercising its rights or from learning of the Mortgage, Plaintiff merely places blame on an unsatisfactory title search.  A failed title search is a far cry from the "rare and exceptional circumstances" that warrant equitable tolling.  *Edo*, 852 F. App'x at 619.  In the absence of more detailed information suggesting that Plaintiff's failure to identify the Mortgage was due to an impediment that would have thwarted a reasonably diligent person's exercise of his or her rights, the Court

declines to equitably toll the applicable statute of limitations.  *See Nath*, 2016
WL 5791193, at *13 (declining to toll statute of limitations under Section 2401
where "Plaintiff has not pled any facts that bear on his exercise of reasonable
diligence").  Accordingly, Plaintiff's quiet title claim is untimely under the
applicable statute of limitations and is dismissed.

### b.  Mandamus Relief

Defendants move next to dismiss Plaintiff's request for mandamus relief.
Plaintiff's mandamus claim seeks an order compelling Defendants "to clear and
quiet title in accordance with 28 U.S.C. § 2410(a)(1) and/or provide a capital
improvement in the sum of $750,000.00[.]"  (AC ¶ 88).[13]  Defendants argue
that the claim should be dismissed because it fails to meet any of the
prerequisites for mandamus relief.  (Def. Br. 16-18).  For the reasons stated
below, the Court dismisses Plaintiff's request for failure to state a claim.[14]

The Mandamus Act provides that "[t]he district courts shall have original
jurisdiction of any action in the nature of mandamus to compel an officer or
employee of the United States or any agency thereof to perform a duty owed to
the plaintiff."  28 U.S.C. § 1361.  "A plaintiff asking for a writ of mandamus

---

[13]    The Court notes that Plaintiff appears to abandon its request for a capital advance loan
later in the AC, stating only that it is "requesting that title be quieted and the lien by
[Defendants] be extinguished."  (AC ¶ 91; *see also id.*, Prayer for Relief ("[Plaintiff]
pray[s] for relief … in the form of Mandamus, compelling [Defendants] … to clear title,
attorney's fees and expenses[.]")).

[14]    Although the Court dismisses the claim for the reasons stated in this section, it further
notes that Plaintiff abandoned its claim.  *See Simon*, 2015 WL 4092389, at *2.  Here,
despite Defendants' argument that the AC failed to state a claim for mandamus relief
(Def. Br. 16-18), Plaintiff failed to address the claim in its memorandum in opposition to
Defendants' motion.

bears a heavy burden." *AHEPA 91, Inc.* v. *U.S. Dep't of Hous. & Urb. Dev.*, 43 F. App'x 450, 453 (2d Cir. 2002) (summary order). "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt." *Ahmed* v. *Cissna*, 327 F. Supp. 3d 650, 672 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed* v. *Cuccinelli*, 792 F. App'x 908 (2d Cir. 2020) (summary order); *see also Zaidan* v. *Tillerson*, No. 17 Civ. 3604 (CBA), 2018 WL 3769966, at *2 (E.D.N.Y. Aug. 9, 2018) (observing that "[j]urisdiction under the mandamus statute is limited to actions seeking to compel the performance of a *nondiscretionary* duty" (quoting *Duamutef* v. *I.N.S.*, 386 F.3d 172, 180 (2d Cir. 2004))). To obtain relief, the plaintiff must show that "[i] there is a clear right to the relief sought; [ii] the Government has a plainly defined and peremptory duty to perform the act in question; and [iii] there is no other adequate remedy available." *Benzman* v. *Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).

In this case, the Section 811 program and components of the Capital Advance Agreement suggest that Plaintiff is *not* entitled to the relief it seeks. The Section 811 program, as discussed earlier, empowers HUD "[t]o provide [capital advances] to private, nonprofit organizations[.]" 42 U.S.C. § 8013(b)(2). Although such advances need not be repaid "so long as the housing remains available for very-low-income persons with disabilities," *id.* § 8013(d)(1), the recipients of the advances must operate the properties in accordance with the Section 811 program "for not less than 40 years," *id.* § 8013(e)(1)(A); *see also* 24 C.F.R. § 891.170 (providing that "[t]he capital advance may not be repaid to extinguish the requirements" imposed by the Section 811 program).

Consistent with these statutory and regulatory directives, the Mortgage on the Blandina Properties is subject to a final maturity date of July 10, 2036. (Mortgage 2; *see also* Use Agreement 2 (stating that "[t]his Agreement shall remain in effect for not less than 40 years from July 11, 1996, unless otherwise approved by HUD")). Plaintiff has not pointed to any provision of the Capital Advance Agreement or the Section 811 program that would entitle it to clear its title to the Blandina Properties of the Mortgage.

Similarly, neither the Cranston-Gonzalez National Affordable Housing Act nor the Section 811 program entitles Plaintiff to a capital advance. The Act limits who can apply for capital advances and prescribes the contents of applications for such advances, but it does not confer any applicant with a right to an advance. *See generally* 42 U.S.C. § 8013. And Plaintiff does not challenge the HUD Secretary's performance of any non-discretionary duties. Plaintiff does not, for instance, allege that the HUD Secretary failed to consider "the types and priorities of the basic services proposed to be provided"; "how quickly services will be established following approval of the application"; or any of the other factors the Secretary must consider when exercising his or her discretion to decide whether to provide a capital advance. *Id.* § 8007. To the contrary, the AC fails to identify any basis that would entitle Plaintiff to a capital advance, and Plaintiff's briefing is similarly silent on the matter.

Rather than identify a clear right to the relief it seeks in the Capital Advance Agreement or the applicable statutes and regulations, Plaintiff posits two other possible sources for Defendants' purported duty to clear title.

Neither is fruitful.  *First*, Plaintiff suggests that the federal quiet title statute obligates Defendants to remove the mortgage on the Blandina Properties.  (AC ¶ 88 (citing 28 U.S.C. § 2410)).  This argument fails because the quiet title statute "does not create a … federal claim[.]"  *Falik* v. *United States*, 343 F.2d 38, 40 (2d Cir. 1965).  Rather, the statute simply "constitutes a limited waiver of sovereign immunity" that allows the United States to be "named a party in any civil action or suit … to quiet title to … real or personal property on which the United States has or claims a mortgage or other lien."  *S.E.C.* v. *Credit Bancorp., Ltd.*, 297 F.3d 127, 138 (2d Cir. 2002).

*Second*, Plaintiff argues that it is entitled to quiet title because Defendants "made it clear that the lien would be lifted" but failed to follow through on their representations.  (AC ¶ 89).  This argument is also unavailing.  To begin, Plaintiff cites no authority for the proposition that representations made by the HUD agents may provide a basis for a writ of mandamus.  *See Michalski* v. *U.S. I.N.S.*, No. 00 Civ. 1216 (LAK), 2000 WL 1280972, at *1 (S.D.N.Y. Sept. 11, 2000) (finding that plaintiff could not pursue request for mandamus relief based on government agents' representations).

Moreover, even assuming that a writ could issue in these circumstances, Plaintiff's claim fails because it is not supported by any plausible factual allegations.  Despite Plaintiff's repeated assertion that HUD's Buffalo-based agents represented that HUD would extinguish the Mortgage (*see, e.g.*, AC ¶¶ 119-120), Plaintiff alleges elsewhere that that the agents merely indicated that "they did not see an issue with the cancellation by HUD of the lien," but

31

that HUD's Washington, D.C. office would make the ultimate decision of whether to remove the Mortgage (*id.* at ¶ 44).  The implausibility of Plaintiff's allegations is further demonstrated by Plaintiff's email exchanges with HUD's Buffalo agents.  (*See* Zormati Decl., Ex. C-E).  The emails reveal that the agents did not make any commitment to remove the Mortgage.  Rather, the agents stated that they did not "see any legal requirement for HUD to discharge" the Mortgage (*id.*, Ex. C), but would recommend to HUD's Washington, D.C. office that the Mortgage be lifted (*id.*, Ex. D).  Under these circumstances, the HUD agents' representations cannot plausibly be understood to confer a right to quiet title or impose a nondiscretionary duty on Defendants to extinguish the Mortgage.

Plaintiff's failure to identify either a right to the relief it seeks or a duty Defendants owed to provide it with such relief compels the dismissal of its request for mandamus relief.  *See Saleh* v. *Pastore*, No. 21-1073, 2021 WL 4978574, at *2 (2d Cir. Oct. 27, 2021) (summary order) (affirming dismissal of mandamus claim where plaintiff failed to "identify any statute or regulation setting out" the relief sought).  Accordingly, the Court dismisses the claim.

### c.   Declaratory Judgment

Finally, Defendants move to dismiss Plaintiff's request for a declaratory judgment "expunging … [Defendants'] lien and clearing title[.]"  (AC ¶ 123). "The [Declaratory Judgment Act] is procedural in nature, and merely offers an *additional remedy* to litigants."  *Gregoire* v. *Citizens Bank*, No. 20-2706, 2021 WL 4127076, at *2 n.1 (2d Cir. Sept. 10, 2021) (summary order) (quoting

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Karp*, 108 F.3d 17, 21 (2d Cir. 1997)).  Put differently, "[d]eclaratory judgments … are remedies, not causes of action."  *MarketShare Corp.* v. *Transactis, Inc.*, No. 21 Civ. 750 (JSR), 2021 WL 1948283, at *6 (S.D.N.Y. May 12, 2021) (citing *Chiste* v. *Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010)).  Here, because all of Plaintiff's claims have been dismissed, its request for a declaratory judgment must also be dismissed. *See Gregoire*, 2021 WL 4127076, at *2 n.1 (noting that "the district court properly declined to address as a separate claim the Gregoires' cause of action for a declaratory judgment" after it dismissed their substantive claims); *MarketShare Corp.*, 2021 WL 1948283, at *6 (dismissing request for declaratory relief after dismissing all of plaintiff's substantive claims).  Accordingly, the Court dismisses the claim.

### 3.    The Court Grants Partial Leave to Amend

Finally, the Court addresses Plaintiff's request for leave to amend its pleadings.  (Pl. Opp. 24-26).  Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)  However, it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019), and such leave may be denied if the amendment would be futile, *see Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Amendment is futile if the "amended portion of the complaint would fail to state a cause of action."  *Parker* v. *Columbia Pictures Indus.*, 204

F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (amendment is not futile where an amended complaint would be "sufficient to withstand a motion to dismiss").

The Court grants Plaintiff leave to amend in part.  Given that Plaintiff has failed to identify changes it would make in an amended pleading and that Plaintiff has already amended its complaint once in this action, the Court finds that any amendment to Plaintiff's claims for (i) negligence, (ii) fraudulent concealment, (iii) *prima facie* tort, (iv) unjust enrichment, (v) violation of applicable federal law, and (vi) mandamus would be futile.  By contrast, the Court finds that Plaintiff may be able to state a claim for quiet title if it can plead additional facts that would warrant equitable tolling.  The Court cautions Plaintiff that the standard for equitable tolling is stringent, and that a second amended complaint that merely regurgitates the allegations contained in the AC will be denied with prejudice.  With that understanding, the Court grants Plaintiff's request to file an amended complaint limited only to its claim for quiet title.  *See Nath*, 2016 WL 5791193, at *13 (providing similar relief).[15]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the Amended Complaint.  The Court dismisses Plaintiff's claims for (i) negligence, (ii) fraudulent concealment, (iii) *prima facie* tort, (iv) unjust enrichment, and (v) violation of federal law under Rule 12(b)(1) for lack of

---

[15]   If Plaintiff elects to continue to pursue its quiet title claim in a second amended complaint, it may also seek, if appropriate, declaratory relief in connection with the quiet title claim.

subject matter jurisdiction.  Additionally, the Court dismisses Plaintiff's claims for (i) quiet title, (ii) mandamus relief, and (iii) declaratory relief under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

If Plaintiff wishes to file a second amended complaint, it may do so on or before **February 11, 2022**.  Any such complaint shall be limited solely to Plaintiff's claim for quiet title.

The Clerk of Court is directed to terminate the motion pending at docket entry 17.

SO ORDERED.

Dated:      January 8, 2022
            New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

35