UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLUE ANGEL REALTY, INC., <br><br>        Plaintiff, <br><br>      -v.- <br><br> UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br>        Defendants. | 20 Civ. 8220 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Blue Angel Realty, Inc., frustrated by its inability to sell a Utica, New York apartment complex (the "Blandina Properties" or the "Properties") due to a lien held by Defendant United States Department of Housing and Urban Development ("HUD"), brought this action against the agency and the United States to clear the Properties' title. By Opinion and Order dated January 8, 2022, this Court dismissed the action in full but granted Plaintiff leave to replead the timeliness of its quiet title claim. *Blue Angel Realty, Inc.* v. *United States*, No. 20 Civ. 8220 (KPF), 2022 WL 94599 (S.D.N.Y. Jan. 8, 2022) ("*Blue Angel Realty I*").[1] Now before the Court is Defendants' motion to dismiss Plaintiff's amended pleadings. Because Plaintiff still has not shown why its claim is timely, the Court grants Defendants' motion.

---

[1]   The Court assumes familiarity with its January 8, 2022 Opinion and Order (Dkt. #28), and incorporates by reference the defined terms set forth therein.

## BACKGROUND[2]

### A.     Factual Background

The Court assumes familiarity with the facts, allegations, and procedural history of this case, all of which are recounted at length in *Blue Angel Realty I*. Only the allegations relevant to the instant motion are summarized here, with particular attention paid to the new allegations in the Second Amended Complaint (the "SAC") regarding the statute of limitations for Plaintiff's quiet title claim.

This action stems from a decades-old lien on the Blandina Properties. CWB acquired the Blandina Properties in 1996 with the assistance of a $1.02 million capital advance from HUD. *Blue Angel Realty I*, 2022 WL 94599, at *2. In exchange for that loan, HUD obtained a mortgage on the Properties. *Id.* The mortgage and related documents provided that no payments or interest would be due on HUD's loan so long as the Properties were used as housing for very-low-income elderly or disabled persons for forty years. *Id.* The parties

---

[2]     This Opinion draws its facts primarily from the Second Amended Complaint (the "SAC" (Dkt. #32)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion, and the exhibits attached thereto. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that for purposes of Rule 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit" (quotation omitted)). The Court also considers the exhibits attached to the Declaration of Bedis Zormati in opposition to Defendants' motion to dismiss ("Zormati Decl." (Dkt. #36)) and the exhibits attached thereto, to the extent that the Court has already deemed them appropriate for consideration on a motion to dismiss. *See Blue Angel Realty I*, 2022 WL 94599, at *1 n.1.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their second motion to dismiss as "Def. Br." (Dkt. #34); to Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #35); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #37).

recorded their agreement, including HUD's mortgage, with the Oneida County
Clerk.  *Id.*

The Blandina Properties changed hands multiple times in the years that
followed.  In or around 2004, CWB lost title to the Properties for failure to
satisfy local tax obligations.  *Blue Angel Realty I*, 2022 WL 94599, at *2.  United
Four Inc. ("United Four") purchased the properties at a tax foreclosure sale
shortly thereafter.  *Id.*  HUD did not participate in that sale.  (SAC ¶ 33).

In May 2006, Plaintiff purchased the Blandina Properties from United
Four.  (SAC ¶ 47).  Plaintiff obtained fee title insurance in conjunction with its
purchase.  (*Id.* at ¶ 54).  The title company conducted a title search and
reported to Plaintiff that the Blandina Properties were unencumbered.  (*Id.* at
¶¶ 55, 57).  Because Plaintiff had no reason to question the finding of its title
company and because Plaintiff's principals were incapable of conducting a title
search themselves, Plaintiff did not conduct any other inquiry into the
Properties' title.  (*Id.* at ¶¶ 56, 58-59).  Plaintiff purchased the Blandina
Properties by warranty deed in reliance on the title company's representation of
clear title.  (*Id.* at ¶¶ 57-58).

The present dispute concerns the status of the 1996 HUD lien today.  In
early 2018, after operating the Blandina Properties as low-income housing for
more than a decade, Plaintiff contracted to sell them to the Utica Housing
Authority.  *Blue Angel Realty I*, 2022 WL 94599, at *3.  (SAC ¶ 49).  Ahead of
the sale, the Utica Housing Authority conducted a title search and discovered
HUD's lien.  (*Id.* at ¶¶ 65-67).  After learning of the encumbrance, Plaintiff

3

contacted HUD's Buffalo office to request assistance in "canceling the lien once and for all." (*Id.* at ¶ 78). After "extensive communications" (*id.* at ¶ 83), an employee of that office represented that he had "no legal objection" to cancelling the lien as a matter of policy (*id.* at ¶ 85). Ultimately, however, HUD's Washington, D.C. office refused to lift the lien. (*Id.* at ¶ 88). Because of this cloud on the Blandina Properties' title, Plaintiff's planned sale of the complex to the Utica Housing Authority failed. (*Id.* at ¶ 66).

## B.    Procedural Background

On January 8, 2022, the Court dismissed this action in full. *Blue Angel Realty I*, 2022 WL 94599, at *15. In particular, the Court dismissed Plaintiff's claims for (i) negligence, (ii) fraudulent concealment, (iii) *prima facie* tort, (iv) unjust enrichment, and (v) violation of federal law under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.* It then dismissed Plaintiff's claims for (i) quiet title, (ii) mandamus relief, and (iii) declaratory relief under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. *Id.* Reasoning that "Plaintiff may be able to state a claim for quiet title if it can plead additional facts that would warrant equitable tolling," the Court granted Plaintiff leave to amend its pleadings as to that claim only. *Id.* at *14.

Plaintiff filed amended pleadings on February 11, 2022. (Dkt. #29). Shortly thereafter, Defendants requested a conference to discuss their anticipated motion to dismiss Plaintiff's amended quiet title claim. (Dkt. #30). Citing its familiarity with the issues presented in Defendants' request, the Court dispensed with its usual requirement of a premotion conference and set

a briefing schedule for Defendants' motion.  (Dkt. #31).  The Court also ordered

Plaintiff to refile its amended pleadings to cure certain filing errors.  (*Id.*).

    Plaintiff filed the SAC on February 17, 2022.  (Dkt. #32).  Defendants

filed a motion to dismiss and accompanying papers on March 15, 2022.  (Dkt.

#33-34).  Plaintiff filed its opposition and an accompanying declaration on

April 13, 2022.  (Dkt. #35-36).  Defendants filed a reply in further support of

their motion on April 27, 2022.  (Dkt. #37).  Accordingly, Defendants' second

motion to dismiss is fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

    A defendant may move to dismiss a complaint on the ground that it fails

to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In

considering such a motion, the Court must "draw all reasonable inferences in

[the] [p]laintiff's favor, assume all well-pleaded factual allegations to be true,

and determine whether they plausibly give rise to an entitlement to

relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal

quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007)).  "While *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the

line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47,

5

50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, documents incorporated by reference in the complaint, and matters of which judicial notice may be taken. *Hu* v. *City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

## B.    Plaintiff's Quiet Title Claim Is Barred by the Statute of Limitations

The Court previously determined that Plaintiff's quiet title claim was filed after the expiration of the statute of limitations. *Blue Angel Realty I*, 2022 WL 94599, at *10-12. Quiet title claims against the United States must be filed within six years after the plaintiff knows or has reason to know of its injury and its cause. *Id.* at *10-11 (citing *DeSuze* v. *Ammon*, 990 F.3d 264, 270 (2d Cir. 2021)). In this case, the clock began to run "at the latest" in May 2006, when Plaintiff purchased the Blandina Properties from United Four. *Id.* at *11. A reasonable title investigation at that time would have revealed HUD's lien on the Blandina Properties, which lien was recorded with the Oneida County Clerk. *Id.* The statute of limitations thus expired in mid-2012, more than a decade before Plaintiff commenced this action. (*See* Dkt. #1).[3]

---

[3]    Plaintiff challenges this calculation of the accrual date, arguing that under the continuing violation doctrine, the statute of limitations did not begin to run until it discovered the HUD lien in July 2018. (Pl. Opp. 15-16). The Court rejected this

Plaintiff's failure to timely commence this action may be excused, however, if it is appropriate to toll the statute of limitations. Equitable tolling is "an extraordinary measure," *Veltri* v. *Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004), that permits courts to accept late filings "where necessary to prevent unfairness to a plaintiff who is not at fault for [its] lateness in filing," *Gonzalez* v. *Hasty,* 651 F.3d 318, 322 (2d Cir. 2011) (quotation omitted). A litigant is entitled to equitable tolling "only if the litigant establishes two elements: '[i] that he has been pursuing his rights diligently, and [ii] that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe* v. *United States*, 577 U.S. 250, 255 (2016) (quoting *Holland* v. *Florida*, 560 U.S. 631, 649 (2010)). The diligence element centers on matters within the litigant's control, while the extraordinary-circumstances element focuses on external factors. *Id.* at 257. The plaintiff bears the burden of proving that tolling is appropriate. *Boos* v. *Runyon,* 201 F.3d 178, 185 (2d Cir. 2000).

1.    **Diligence**

Even drawing all reasonable inferences in Plaintiff's favor, the pleadings do not support Plaintiff's contention that it diligently pursued its rights. Plaintiff maintains that it acted with due diligence by (i) conducting a title search prior to purchasing the Blandina Properties, and (ii) asking HUD to

---

argument in the context of Defendants' first motion to dismiss. *Blue Angel Realty I*, 2022 WL 94599, at *11. Plaintiff gives the Court no reason to reconsider that holding.

remove the cloud on the Properties' title.  (Pl. Opp. 10, 14-15).  Neither

argument — whether considered separately or together — is availing.

This Court already considered and rejected Plaintiff's first argument in

*Blue Angel Realty I.*  The prior complaint asserted that Plaintiff's claim was

timely because Plaintiff's title search failed to identity HUD's interest in the

properties.  *Blue Angel Realty I*, 2022 WL 94599, at \*12.  This Court

determined that tolling was not warranted on this ground absent more detailed

information about the reason the title search did not reveal the loan.  *Id.*

Although the SAC contains slightly more detail than the prior complaint, the

essence of Plaintiff's theory remains the same: its tardiness should be excused

because it relied on its title insurer's mistaken belief that the Properties were

unencumbered.  (Pl. Opp. 14).  Of course, hiring a third party to perform a title

search is more diligent than not commissioning any inquiry at all.  *See A.Q.C.*

*ex rel. Castillo* v. *United States*, 656 F.3d 135, 145 (2d Cir. 2011) (declining to

toll statute of limitations where a database search would have revealed claim);

*In re Vallecito Gas, LLC*, 461 B.R. 358, 399 (Bankr. N.D. Tex. 2011) (finding

lack of diligence where bankruptcy trustee failed to conduct title search that

would have revealed duly recorded assignments).  But the fact of hiring a third-

party professional alone does not necessarily satisfy a plaintiff's diligence

obligation.

It is well-established that "a want of diligence by a plaintiff's attorney

generally will not prompt a court to provide relief from a limitations period."

*Chapman* v. *ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512

(2d Cir. 2002).  Consequently, courts have declined requests for equitable
tolling where, for instance, a plaintiff's attorney misunderstood a court's filing
requirements, *see South* v. *Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994), or
miscalculated a filing deadline, *Irwin* v. *Dep't of Veterans Affs.*, 498 U.S. 89, 96
(1990).  There is no reason why similar "garden variety" error by a title insurer
should be treated differently.  *See Dillon* v. *Conway*, 642 F.3d 358, 364 (2d Cir.
2011).

        The error by Plaintiff's title insurer falls into this category of unfortunate,
but inexcusable, mistakes.  Failing to thoroughly investigate a title — like
failing to research a court's rules — does not demonstrate the diligence
required to warrant equitable tolling, particularly in this case, where "a
reasonable investigation of the title to the Blandina Properties at the time
Plaintiff purchased them would have revealed the duly recorded Mortgage."
*Blue Angel Realty I*, 2022 WL 94599, at *11 (quotation marks omitted); *see also
Redden* v. *Miller* (*In re Redden)*, No. 04-12335 (PJW), 2013 WL 5436368, at *5
(Bankr. D. Del. Sept. 30, 2013) (finding a lack of diligence because plaintiffs
relied on third party's representation that a property was unencumbered when
"a simple title search at the time would have either confirmed or contradicted
that statement").  This is particularly so because Plaintiff itself acknowledges
that the title company's failure to unearth the lien may have been due to the
searcher's error and could "sound in legal malpractice or negligence against the
title company."  (Pl. Opp. 14).

The only other potential explanation Plaintiff offers for its title insurer's failure to discover HUD's mortgage is a single sentence in its opposition brief musing that "[i]t is possible" that after Plaintiff conducted its title search and purchased the Blandina Properties, HUD realized that its lien had been lifted and re-recorded that lien.  (Pl. Opp. 10).  Under this theory, Plaintiff could not have discovered the lien in 2006 because no lien was recorded at that time.  For starters, this theory is contradicted by Plaintiff's own allegations, which acknowledge that HUD's lien was "duly recorded in the offices of the Oneida County Clerk" in 1996, ten years before Plaintiff's purchase.  (SAC ¶ 25).  But Plaintiff's theory suffers from a more fundamental problem: Plaintiff did not allege it in the operative pleading.  All that is before the Court is a conclusory line in a brief "lacking in any detail or evidentiary support."  *See Samo* v. *Keyser*, 305 F. Supp. 3d 551, 557 (S.D.N.Y. 2018).  This surmise falls far short of Plaintiff's burden of pleading facts that "nudge [its] claims across the line from conceivable to plausible."  *In re Elevator Antitrust Litig.*, 502 F.3d at 50 (quoting *Twombly*, 550 U.S. at 570).  The Court is left with only the mistake or negligence of Plaintiff's title insurer, which does not excuse Plaintiff's tardy filing.  *See Baldayaque* v. *United States*, 338 F.3d 145, 152 (2d Cir. 2003) (explaining that "normal errors" do not justify equitable tolling).

Plaintiff's attempts to work with HUD to clear the title on the Blandina Properties also do not establish Plaintiff's diligence.  The Court accepts Plaintiff's allegation that once the Utica Housing Authority's title search revealed HUD's lien, Plaintiff's attorneys contacted HUD's Buffalo office and

requested that the agency cancel the lien.  (SAC ¶¶ 78-83).  This outreach, while resourceful, does not support Plaintiff's tolling claim for two reasons.  For one, Plaintiff did not contact HUD about the lien until August 2018, approximately six years after the statute of limitations had expired.  (*Id.*).  This late effort does not factor into the diligence inquiry, which focuses on plaintiffs' efforts to pursue their claims *during the limitations period.  Smith* v. *McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000) ("[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll."), *cert. denied,* 531 U.S. 840 (2000).  And second, even if Plaintiff had attempted to resolve the issue with HUD during the relevant period, that fact would not excuse Plaintiff's obligation to timely file its claim.  "Settlement discussions are not the sort of extraordinary circumstances that would trigger the application of equitable tolling[.]"  *Rite Aid of N.Y., Inc.* v. *1199 SEIU United HeathCare Workers E.*, 334 F. Supp. 3d 568, 576 (S.D.N.Y. 2017) (quoting *Hooper* v. *Berryhill*, No. 15 Civ. 6646 (JLC), 2017 WL 927843, at *4 (S.D.N.Y. Mar. 8, 2017)); *see also Poindexter* v. *Warner/Chappell Music Inc.,* No. 06 Civ. 3403 (LTS) (DCF), 2009 WL 302064, at *5 (S.D.N.Y. Feb. 9, 2009), *aff'd,* 372 F. App'x 103 (2d Cir. 2010) (summary order).  Accordingly, Plaintiff has not carried its burden on the diligence prong of the tolling inquiry.

### 2.    Extraordinary Circumstances

Even if Plaintiff had acted with due diligence — which it has not — it has not adequately alleged that extraordinary circumstances prevented it from timely filing.  This prong of the equitable tolling test "is met only where the

circumstances that caused a litigant's delay are both extraordinary *and* beyond its control," *Menominee Indian Tribe*, 577 U.S. at 257, such as when a medical or mental impairment prevents a plaintiff from efficiently pursuing its rights or a defendant purposefully prevents a plaintiff from discovering its claim, *Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003). Plaintiff identifies no such circumstance.

The only extraordinary condition that Plaintiff cites explicitly is its detrimental reliance on its title insurer's representation that the Blandina Properties were unencumbered. (Pl. Opp. 14). As the Court explained in *Blue Angel Realty I* and expanded upon above, "[a] failed title search is a far cry from the 'rare and exceptional circumstances' that warrant equitable tolling." *Blue Angel Realty I*, 2022 WL 94599, at *12 (quoting *Edo* v. *Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) (summary order)). Critically, Plaintiff's reliance is not a factor beyond its control; even accepting that Plaintiff and its principals were not qualified to conduct a title search themselves (SAC ¶ 56), it was within Plaintiff's purview both to hire a third party to perform this task and to rely on that entity's representation without further confirmation. A plaintiff's choice to rely on the opinion of its title insurer, like a plaintiff's choice to rely on the opinion of its lawyer, is ultimately an "affair[] within the litigant's control," and thus not grounds to find that "extraordinary circumstances" exist. *Menominee Indian Tribe*, 577 U.S. at 257.

Plaintiff also suggests that HUD's failure to provide written approval of the 2004 tax sale of the Blandina Properties to United Four prevented it from

timely discovering HUD's lien.  (Pl. Opp. 10 ("Had HUD obtained this prior written approval, Plaintiff would have been aware of the alleged liens.")). Although Plaintiff does not call this an extraordinary circumstance in so many words, the Court addresses it as such in the interest of thoroughness.  Tolling can be warranted when a "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Zerilli-Edelglass*, 333 F.3d at 80; *see also, e.g.*, *Barrett* v. *United States*, 689 F.2d 324, 327-28 (2d Cir. 1982) (tolling limitations period where defendant obscured its identity); *New York* v. *Hendrickson Bros., Inc.*, 840 F.2d 1065, 1084 (2d Cir. 1988) (tolling limitations period where defendant destroyed documents evincing its wrongdoing).  But Plaintiff has not plausibly alleged that HUD's failure to participate in the 2004 transfer was calculated to obscure Plaintiff's cause of action.  For one, that sale took place two years before Plaintiff purchased the Blandina Properties; at that point, HUD could not have anticipated Plaintiff's future involvement with the property.  And far from hiding its interest in the apartment complex, HUD duly recorded its mortgage in 1996.  *Blue Angel Realty I*, 2022 WL 94599, at *2. Plaintiff has not met its burden of alleging that an extraordinary external circumstance prevented it from asserting its claim.

There is a subtle but important difference between not being able to discover a cause of action and not actually discovering that cause of action. Although both situations are regrettable, only the former is grounds for equitable tolling.  *See DeSuze* v. *Ammon*, 990 F.3d 264, 271 (2d Cir. 2021) ("A statute of limitations may be equitably tolled … in a situation where a plaintiff

could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." (internal quotation marks omitted)). Plaintiff established that it did not discover the lien during the limitations period, but has not plausibly alleged that it could not have.  For this reason, Plaintiff's equitable tolling claim fails.  Moreover, the SAC adds little to Plaintiff's allegations in the Amended Complaint (*see* Dkt. #14), and the Court has already warned Plaintiff that failure to plead additional facts establishing its claim would result in dismissal with prejudice, *Blue Angel Realty I*, 2022 WL 94599, at *14 ("The Court cautions Plaintiff that the standard for equitable tolling is stringent, and that a second amended complaint that merely regurgitates the allegations contained in the [Amended Complaint] will be denied with prejudice.").

Because Plaintiff's quiet title claim is untimely, the Court does not reach the merits of that claim.  *See Saudagar* v. *Walgreens Co.*, No. 18 Civ. 437 (KPF), 2019 WL 498349, at *5 n.4 (S.D.N.Y. Feb. 8, 2019) (declining to address alternate grounds for dismissal because "the record is clear that no tolling of the ... limitation period is warranted"); *see also Cobar* v. *Drug Enf't Admin. Asset Forfeiture Section (CCF)*, No. 12 Civ. 7415 (KPF), 2014 WL 1303110, at *10 (S.D.N.Y. Mar. 31, 2014) (listing cases doing the same).

**CONCLUSION**

Because Plaintiff's only remaining claim is time-barred, Defendants'
motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate all
pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:        December 9, 2022
              New York, New York

_____
                    KATHERINE POLK FAILLA
                    United States District Judge

15